## W. S. SMITH ET AL. v. MARTHA PATE ET AL.

### No. 648.—Decided March 28, 1898.

**Limitation—Adverse Possession—Executory Sale.**

A foreign administrator whose decedent had sold land reserving a vendor's lien, surrendered the purchase money notes to the maker on his conveying the land to another, whose notes for the purchase money, without lien reserved, were made payable to the administrator and were afterwards paid to him,—he failing, however, to account to the heirs of decedent therefor. In a suit by the heirs to recover the land from defendants in possession for fifteen years under such purchase,—held, that their possession taken under such circumstances was adverse, and plaintiffs were barred. (Pp. 598 to 600.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from Bell County.

*W. S. Holman*, for plaintiffs in error.—The Court of Civil Appeals erred in holding that the possession of the land by W. W. Walker and the plaintiff in error J. T. Dulaney was not adverse, and that said Dulaney was not entitled to recover on his plea of statute of limitation. Holliday v. Cromwell, 37 Texas, 437; Burns v. Masterson, 80 Texas, 55; Mhoon v. Cain, 77 Texas, 317; Murkley v. Reynolds, 2 Texas Civ. App., 470; 20 Texas, 711; 35 S. W. Rep., 755.

*Owens Miller* and *Bryan & Morgan*, for defendants in error.—When an express lien is retained in a deed the superior title to the land remains in the vendor and descends to his heirs and on default of payment they may maintain suit in trespass to try title and recover land. Harris v. Catlin, 53 Texas, 1; Webster v. Mann, 52 Texas, 416.

Letters of administration granted upon an estate by a sister State confer no power upon such administrator to collect, compromise, sue for or make a novation of any debt due his intestate in this State. Cobb v. Norwood, 11 Texas, 556; Terrell v. Crane, 55 Texas, 81.

A purchaser of land under executory contract holds in subordination to the title of his vendor, and until a repudiation and notice is given of his adverse holding limitation will not run in his favor nor in favor of any one holding under him, especially when second vendee holds under a quit-claim deed.

The legal title to land sold under an executory contract remains in the vendor until the purchase money is paid, and this title vests in his heirs at his death, and cannot be defeated by a plea of stale demand, made by the vendee or his privies. Rosevelt v. Davis, 49 Texas, 463; Clark v. Adams, 80 Texas, 674; Barber v. Hoffman, 37 S. W. Rep., 769; Keys v. Mason, 44 Texas, 140; Lander v. Rounsaville, 12 Texas, 195.

A sale of land belonging to estate by administrator without order of Probate Court is void. An administrator has no power to accept a note or bond of a third party in satisfaction of a debt due the estate he represents. He cannot make any novation of debts due his intestate without an order of the proper probate court. Collins v. Ball, 82 Texas, 259; Trammell v. Swan, 25 Texas, 474; Scott v. Atchison, 38 Texas, 385; s. c., 36 Texas, 76.

BROWN, ASSOCIATE JUSTICE.—The defendants in error, Martha Pate et al., brought suit against the plaintiffs in error in the District Court of Bell County to recover a certain tract of land described in the petition. The facts necessary to determine the question involved on this writ of error are substantially found by the trial court as follows:

Robert Holliday resided in Texas in 1878 and was the owner of the land in controversy. On November 30, 1878, Holliday sold the land to W. L. Jones for $1500, and conveyed it to him by deed which retained the vendor's lien for three notes of $500 each, the purchase money of the land. Holliday left Texas and removed to Tennessee, leaving Jones'

notes in the hands of W. W. Walker, of Bell County, for collection.

Robert Holliday died intestate in the State of Tennessee in the year 1880, leaving neither wife nor child surviving him. In the same year W. T. Bennett was appointed administrator of the estate of Holliday in the State of Tennessee and duly qualified as such in that State, but never qualified as administrator in the State of Texas.

On the 30th day of September, 1880, W. L. Jones, at the instance of W. T. Bennett, administrator of Robert Holliday, conveyed the land to W. W. Walker, who executed his notes for $1000 payable to W. T. Bennett, which notes Walker afterwards paid to Bennett, but no lien was retained to secure these notes. The notes of Walker were received by Bennett in full satisfaction of the $1500 due by Jones upon the land and Bennett released the vendor's lien upon the land. The three notes of Jones to Holliday were surrendered by Bennett to Jones and by the latter destroyed. W. W. Walker went into possession of the land at the time it was deeded to him and remained in possession thereof until the 31st day of July, 1884, when he sold and conveyed the land to John T. Dulany for a consideration of $350 in cash and two notes of $750 each. John T. Dulany knew when he purchased the land from Walker that Bennett, the administrator of the estate of Holliday, had compromised the debt due from Jones to Holliday for the sum of $1000, for which he took Walker's notes. The defendant Dulany went into possession of the land immediately upon purchasing it from Walker and had the land enclosed, using, cultivating and enjoying it and paying all taxes due thereon for more than ten years before the suit was filed against him.

At the time of his death Robert Holliday owed no debts, and the administrator, W. T. Bennett, has never accounted to the plaintiffs for any of the proceeds of the estate. The plaintiffs in the court below are the heirs of Robert Holliday.

The trial court entered judgment for the plaintiffs in that court against the plaintiffs in error, for the land, which judgment was by the Court of Civil Appeals affirmed.

It is the established rule in this State that where one enters into the possession of land under a deed in which a lien for the purchase money is reserved, his possession is not adverse to his vendor unless the vendee repudiates the trust relation which the law implies and claims to hold the land in opposition to the claim of superior title on the part of his vendor. "But it is well settled that the possession of the vendee may become so far adverse that he will acquire a title by limitation." Howard v. McKinney, 54 Texas, 187.

In this case the possession was of that character and continued for such a length of time as will give title to the possessor by limitation if the possession was adverse to the estate of Holliday, the original vendor. The possession of Jones was not hostile to the claim of Holliday or his administrator; but when the debt from Jones to the estate of Holliday was settled by the administrator, the lien upon the land released, and

Jones conveyed it to Walker by absolute deed, the trust relation was ended, for Walker did not receive the title as trustee for Holliday or his estate, but under a claim of title independent of and free from any right of the estate in the land or to a lien upon it for the payment of the purchase money.    Bennett, the administrator, participated in the transaction by which the debt was compromised and settled, and released the lien upon the land, and therefore had notice of all the facts which went to show the adverse character of the possession taken by Walker.    As Walker held the possession and claimed the land in hostility to the claim of the heirs of Holliday, Dulany, who purchased from Walker, never was placed in any relation of trust to the estate of Holliday or his heirs.    Robertson v. Wood, 15 Texas, 1.

In the case last cited this court after discussing the general proposition that the vendee in an executory contract for the purchase of land did not hold it adversely to the vendor unless the vendee repudiated the trust relation between them, said: "But the question here is, whether the possession of the vendee, holding under an executed conveyance from the purchaser in the executory contract, and openly and notoriously asserting absolute proprietorship in himself under his conveyance, within the knowledge of the original vendor, is adverse to the title of the latter. And this, it is conceived, is a question which it will not be difficult to answer upon principle and authority.    *    *    *

"Here the possession was taken and held by the defendant, under an executed contract, conveying absolutely the fee, and was accompanied by an assertion of right and a claim of absolute proprietorship, openly and notoriously, and within the actual knowledge of Clark, under whom the plaintiff claims.    If this did not put an end to the trust relation created by the executory contract of purchase,—if the possession thus held was not adverse to the plaintiff's title,—it would be difficult to conceive of anything which would put an end to that relation and render the possession of the tenant adverse."

The facts in the case now before us are much stronger in favor of the adverse character of the possession of Dulany than were the facts in Robertson against Wood, above cited.    In this case Walker took the conveyance and went into possession with the distinct understanding that the debt due from Jones to Holliday had been discharged and the lien upon the land released.    He entered under a deed absolute in form, purporting to convey to him the absolute title to the land, and his possession was continued until he sold the land as his own to Dulany, one of the plaintiffs in error, who continued to use and enjoy it, paying taxes upon it, under an open and notorious claim of title against the world, for about twelve years, making fifteen years time that elapsed from the release of the lien by Bennett as administrator to the institution of this suit.

If it be granted that Bennett, the administrator appointed in Tennessee, did not have the authority to compromise the debt and release the lien upon the land, and if it be admitted that in law the debt from

Jones to the estate of Holliday was never settled and the lien never released, it is nevertheless a fact just as potent to establish the adverse character of the possession, that Walker believed that the debt had been settled and the lien released and took the title and possession in hostility to any claim of the administrator, and transmitted it to Dulany who held it in the same way.    If the debt were lawfully discharged and the lien legally released by the act of Bennett, the Tennessee administrator, then limitation would not be necessary to give protection to the defendant's possession.    The title would be good without limitation under such circumstances.

If the notice which Bennett, the administrator, had of the character of Walker's possession did not bind the heirs, then we think that the facts, that the heirs were non-residents of the State and unknown to Walker or to Dulany, so far as the record shows, coupled with the fact that Jones conveyed the land by absolute deed to Walker and that the heirs failed to assert any right to rescind the contract for more than fifteen years after the adverse possession of Walker was taken, are sufficient to sustain the plea of limitation as against such heirs.    Walker v. Emerson, 20 Texas, 711.

We do not think it necessary to discuss the powers of a foreign administrator to collect a debt from a citizen of this State, there being no administration in this State, for the reason that in our opinion Dulaney had title by limitation as against the claim of the heirs of Holliday, and the court below should have entered judgment for him upon the conclusions of fact which we find in the record.    It is therefore ordered that the judgment of the District Court and of the Court of Civil Appeals be reversed, and that judgments be here entered that the defendants in error take nothing by their suit and that the plaintiffs in error go hence without day and recover of the defendants in error all costs in all of the courts.

*Reversed and rendered.*